UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
IN ADMIRALTY

No. 7:06-CV-184-F

| | |
|---|---|
| BENNIE COCKERHAM, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>GREAT LAKES DREDGE AND DOCK )<br>COMPANY, )<br>   Defendant. ) | ORDER |

This matter is before the court on the parties' cross-motions for summary judgment [DE-18] & [DE-19].

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Bennie Cockerham initiated this action on December 18, 2006 by filing a Complaint [DE-1] in this court seeking damages for negligence under the Jones Act, 46 U.S.C. § 30104,[1] as well as damages for unseaworthiness under general maritime law. Defendant Great Lakes Dredge and Dock Company ("Great Lakes") filed an Answer [DE-4] and First Amended Answer [DE-5] on January 9, 2007.

---

[1] The Jones Act was formerly codified at 46 U.S.C. App. § 688. As of October 6, 2006, that section was deleted and the Jones Act was revised and recodified at 46 U.S.C. § 30104. *Compare* 46 U.S.C.A. § 688 (indicating section was repealed) *with* 46 U.S.C.A. § 30104 (providing for civil actions by injured or deceased seamen). Congress did not appear to make any substantive changes to the Jones Act by its changes to the statute. See H.R.Rep. No. 109-170 (2005), reprinted in 2006 U.S.C.C.A.N. 972, 973, 2005 WL 1688342 ("[This bill] codifies existing law rather than creating new law.").

The court finds the undisputed facts to be as follows:

Cockerham has worked for Great Lakes off and on for approximately 20 years. *See* Def.'s Mot. for Summ. J. [DE-18], Dep. of Cockerham pp. 25, 27. During most of those years, Cockerham worked as a welder on dredges or other vessels. He was, however, periodically laid off from his jobs at Great Lakes and would file for and collect unemployment benefits. *See id.* at p. 27.

In April of 2004, Cockerham was assigned to the "beach crew" as a heavy equipment operator on a job for Great Lakes in Atlantic City, New Jersey. Def.'s Mot. for Summ. J. [DE-18], Dep. of Cockerham pp. 43-45. Cockerham was paid according to the heavy equipment operator rate for the Atlantic City job, and was laid off in July 2004. *Id.* at p. 46. He did not work for anyone in any capacity until he was hired by Great Lakes again on November 8, 2004, for a beach renourishment project on Bald Head Island, North Carolina. *Id.*

On the Bald Head Island job, Cockerham was employed as an "operator" and was ostensibly assigned to the "hydraulic department." *See* Pl.'s Cross Mot. for Summ. J. [DE-19], Ex. 1 ("Notice of Injury"). Cockerham contends that he was a member of the crew of Great Lakes's dredge at Bald Head Island, *see* Complaint [DE-1] ¶ 4, while Great Lakes contends that Cockerham was hired as a "heavy equipment operator" and was not a seaman. *See* Def.'s Mot. for Summ. J. [DE-18], Aff. of Rick M. Leitz ¶ 2. Cockerham admits that he was paid at the designated forklift operator rate. *See* Def.'s Mot. for Summ. J. [DE-18], Dep. of Cockerham p. 46. It is undisputed that his duties at the Bald Head Island job consisted of moving and connecting pipe and welding equipment as sand was pumped onto the shore, and spreading sand. *Id.* at pp. 51-53. It is also undisputed that the pipe that Cockerham moved was connected to the

2

dredge. *See* Pl.'s Cross Mot. for Summ. J. [DE-19], Dep. of Cockerham p. 127. Cockerham was injured on December 18, 2004, as he operated a forklift. *See* Def.'s Mot. for Summ. J. [DE-18], Aff. of Rick M. Leitz ¶ 2.

Immediately after the Bald Head Island accident, Cockerham began receiving Temporary Total Disability Benefits under the Longshore and Harbor Worker's Compensation Act, 22 U.S.C. § 901 ("LHWCA"). *Id.* ¶ 5. Great Lakes, however, filed a notice of termination of Cockerham's benefits on June 13, 2007. *See* Pl.'s Cross Mot. for Summ. J. [DE-19], Ex. 2 ("Notice of Controversion of Right to Compensation"). Great Lakes, in the "Notice of Controversion of Right to Compensation" represented that it was terminating Cockerham's LHWCA benefits because he had "reached maximum medical improvement" and because Cockerham had filed the instant lawsuit "contending that he was a member if[sic] a crew of a vessel and his accident and injury are subject to the Jones Act and General Maritime law." *Id.*

## II. STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Any analysis of the propriety of summary judgment must focus on both the materiality and the genuineness of the fact issues. *Ross v. Comm. Satellite Corp.*, 759 F.2d 355, 364 (4th

Cir. 1985). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. The question of whether a fact issue is material is determined by reference to the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

As the Court explained in *Celotex*;

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, 477 U.S. at 322-23. Thus, the moving party may meet its burden as to an issue for which the non-movant will bear the burden of proof at trial by demonstrating that there is a lack of evidence to support the non-moving party's case. *Id.* at 325.

Furthermore, the proper standard for summary judgment mirrors that for directing a verdict under Rule 50(a) of the Federal Rules of Civil Procedure, whereby the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson*, 477 U.S. at 250. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict

4

for the party producing it, upon whom the *onus* of proof is imposed.' " *Id.* at 252 (internal citations omitted).

Where, as in this case, there are pending cross-motions for summary judgment, the court applies the same standards of review. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir.1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment-even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted). When, however cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they may be probative of the non-existence of a factual dispute. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir.1983).

## III. ANALYSIS

At the heart of the parties' dispute is the following question: Was Cockerham a seaman within the meaning of the Jones Act and general maritime law at the time of his injury? Great Lakes answers the question in the negative and contends it is entitled to summary judgment. Cockerham, in response, contends that he is entitled to summary judgment on the issue of his seaman status because no reasonable jury could conclude that he was *not* seaman at the time of his injury, and because Great Lakes should be estopped from contesting his status as a seaman.

### A. "Seaman" status

To recover under the Jones Act for negligence, or to recover under general maritime law for unseaworthiness, a plaintiff must be a "seaman." *See* 46 U.S.C. App. § 30104 ("Any seaman who shall suffer personal injury in the court of his employment may, at his election, maintain an action for damages at law."); *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995)(explaining that

5

only seaman, as opposed to other maritime workers, are entitled to "the trilogy of heightened legal protections" of actions for negligence under the Jones Act and actions for "maintenance and cure" and "unseaworthiness" under general maritime law). As the Supreme Court has observed, however, "[t]he Jones Act . . . does not define the term 'seaman' and therefore leaves to the courts the determination of exactly which maritime workers are entitled to admiralty's special protections." *Id.* at 355.

The Supreme Court has explained that "both the maritime law backdrop against which Congress enacted the Jones Act and Congress' subsequent enactments provide some guidance" as to the meaning of "seaman." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 487 (2005). "First, 'seaman' is a term of art that had an established meaning under general maritime law," and thus the Supreme Court has concluded that Congress, in enacting the Jones Act, "took the term 'seaman' as the general maritime law found it." *Id.* "Second, Congress provided further guidance in 1927 when it enacted the LHWCA, which provides scheduled compensation to land-based maritime workers but which also excepts from its coverage 'a master or member of a crew of any vessel.' " *Id.* at 488. Consequently, "the Jones Act and the LHWCA are complementary regimes that work in tandem: The Jones Act provides tort remedies to *sea*-based maritime workers, while the LHWCA provides workers' compensation to *land*-based maritime employees." *Id.* (emphasis in original).

Despite the guidance provided by the general maritime law and LHWCA, courts still have struggled with the definition and application of the term "seaman." After considerable litigation over seaman status resulted in a plethora of common law tests and factors, the Supreme Court articulated "the proper inquiry to determine seaman status":

> [T]he essential requirements for seaman status are twofold. First, . . . an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission. . . . Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The seaman inquiry is a mixed question of law and fact . . . .

*Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997)(citations and internal quotation marks omitted, alterations in original).

### B. The "substantial connection" requirement

In the instant case, Great Lakes assumes, for purposes of summary judgment, that Cockerham can satisfy the first requirement of the seaman status inquiry; that is, Great Lakes assumes that Cockerham can establish that his duties contributed to the function of the vessel. Great Lakes argues, however, that Cockerham cannot proffer sufficient evidence to satisfy the second "substantial connection" requirement. Specifically, Great Lakes notes that Cockerham, at the time of his injury, did not work on the water, and his job was entirely shore-based.

This court finds the Supreme Court's decision in *Papai* to be particularly relevant to the instant case. In *Papai*, the Court considered whether Papai, a member of the Inland Boatman's Union of the Pacific (IBU), and classified as a "qualified deckhand," was a "seaman" under the Jones Act. Papai was not employed continuously by a single employer but through the IBU union hall for short periods by different employers to perform stevedoring and maintenance, as well as traditional seaman's work. Harbor Tug did not hire permanent or regular crews for its vessels, but hired workers from the IBU on a day-to-day basis. On the date of his injury, Papai was painting the housing structure of a tug.

*Papai* focused on the second element of seaman status: whether Papai could demonstrate a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* The Court explained:

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Id.*

The "substantial connection" requirement has spawned considerable litigation, largely as a result of disputes, like the case at bar, over whether employees engaged in traditionally land-based occupations such as welding or painting become "seamen" by virtue of performing their jobs in a maritime setting, or whether workers whose duties usually are undertaken in traditionally maritime contexts still are "seamen" when their employment moves to a non-maritime setting. It is important to remember that the Supreme Court has explained:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Chandris, Inc. v. Latsis,* 515 U.S. 347, 368 (1995) ("[W]e think it preferable to focus upon the essence of what it means to be a seaman and to eschew the temptation to create detailed tests to effectuate the congressional purpose [of the Jones Act]."). Thus,

> [f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Papai*, 520 U.S. at 555.

Against this background, the court concludes that Cockerham cannot, as a matter of law, satisfy the "substantial connection" requirement. Cockerham relies mainly upon his assertion that the dredge pipe, which he moved and serviced on the beach, was connected to the vessel. Thus, he argues, "although [he was] onshore, [his] connection to the vessel was significant and necessary to complete the mission of the vessel." Cockerham's argument fails for two reasons. First, Cockerham's contribution to the mission of the dredge has not been disputed by Great Lakes for purposes of summary judgment, and more importantly, it does not bear directly upon the "substantial connection" requirement–rather, it bears upon the first requirement for seaman status. Second, the fact that Cockerham worked with an appurtenance to a vessel does not alter the fact that his employment on the Bald Head Island job was entirely land-based. It is undisputed that the main responsibility in his job was to operate a forklift on the shore. Quite simply, he was never exposed to the "perils of the sea" against which the Jones Act was designed to protect. *See Chandris*, 515 U.S. at 354. As the Supreme Court noted in *Chandris*, "[l]and-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured." *Chandris*, 515 U.S. at 361. Similarly, a land-based maritime worker is not afforded seaman status by virtue of working on an appurtenance to a vessel. *See, e.g., Loyd v. Ram Indus., Inc.*, 64 F. Supp. 2d 1235, 1239 (S.D. Al. 1999)(concluding that the undisputed facts established that the plaintiff was not a seaman where the plaintiff's job duties consisted of "inspecting and maintaining the onshore booster pump and the land-based section of the discharge pipe").

Cockerham also asks the court to take notice of the fact that he had spent most of his twenty year-career aboard vessels, and the injury that is the subject of his suit happened during one of his only two shore assignments. Of course, the Supreme Court rejected a similar

argument in *Papai* where the plaintiff argued that the court should consider his prior 12 employments with the defendant during the 2 ½ months preceding his injury. *Papai*, 520 U.S. at 559-560. The court concluded that "these discrete engagements were separate from the one in question" and would not qualify one for seaman status. *Id.* at 560. Thus, the substantiality and duration of a claimant's connection with a vessel for Jones Act seaman's status is considered in the context of the employment during which the subject injury occurred, not in light of the claimant's entire career. *Id.* As this court has already discussed, the evidence in the record would not allow a reasonable fact finder to conclude that Cockerham had a substantial connection to the dredge during his employment at the time of his injury.

## C. Estoppel

Nevertheless, Cockerham argues that Great Lakes should be estopped from arguing that he is not a seaman because it ceased paying Cockerham benefits under the LHWCA. The record evidence establishes that Great Lakes began paying Cockerham benefits under the LHWCA almost immediately following his accident. *See* Def.'s Mot. for Summ. J. [DE-18], Aff. of Rick M. Leitz ¶ 5. On June 13, 2007, Great Lakes (or its insurance carrier) filed a "Notice of Controversion of Right to Compensation," notifying Cockerham that he would no longer receive benefits under the LHWCA. *See* Pl.'s Cross Mot. for Summ. J. [DE-19], Ex. 2 ("Notice of Controversion of Right to Compensation").

As this court has already noted, the Jones Act and the LHWCA are complementary regimes that work in tandem, with the Jones Act providing tort remedies to sea-based maritime workers, while the LHWCA provides worker's compensation to land-based maritime workers. *Stewart*, 543 U.S. at 488. In *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 91 (1991), the Supreme Court held that the receipt of voluntary worker's compensation payments under the

LHWCA does not bar a subsequent action under the Jones Act, unless the claimant received a formal award from the compensation board settling his claims in their entirety. Consequently, Cockerham was free to initiate this action seeking remedies only available to seamen because Great Lakes voluntarily paid Cockerham benefits under the LHWCA.

Cockerham tries to flip the *Gizoni* holding on its head, and argue that Great Lakes' cessation of payments is tantamount to an admission by the company that he is a seaman, and Great Lakes should now be estopped from contesting his seaman status. The court cannot accept Cockerham's arguments.

First, there is nothing in the "Notice of Controversion of Right to Compensation" that indicates that Great Lakes itself admitted that Cockerham was a seaman. The Notice contained the following explanation as to why Great Lakes was controverting Cockerham's right to compensation:

> The employee has reached maximum medical improvement for his December 18, 2004 injury. The Employee contends that he is not subject to the provisions of the [LHWCA] and has filed a lawsuit in Federal District Court, Eastern District of North Carolina, entitled Bennie Cockerham v. Great Lakes Dredge & Dock Company, LLC, Case Number 7:06-CV-00184, contending that he is a member if[sic] the crew of a vessel and his accident and injury are subject to the Jones Act and General Maritime Law. The employer/carrier claims maintenance and cure credit for any previously paid [LHWCA] compensation and medical benefits. . . .

*See* Pl.'s Cross Mot. for Summ. J. [DE-19], Ex. 2 ("Notice of Controversion of Right to Compensation"). Plainly read, the Notice simply indicates what is not disputed: Cockerham had filed the instant suit claiming to be a seaman.

Second, even if the language in the Notice could somehow be construed as Great Lakes' own affirmative statement that Cockerham was a seaman, the court concludes that none of various doctrines of estoppel apply. Cockerham himself does not specify the manner in which Great Lakes should be "estopped." Assuming Cockerham is contending that Great Lakes must

11

be equitably estopped from contesting his seaman status, the court notes that in the context of maritime law, equitable estoppel has been explained as follows:

> Traditionally, the doctrine of equitable estoppel operates to preclude a party who has made representations of fact through his words or conduct from asserting rights which might perhaps have otherwise existed as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right.

*Oxford Shipping Co., Ltd. v. New Hampshire Trading Corp.*, 697 F.2d 1, 4 (1st Cir.1982) (quotations and alterations omitted). Here, there is no suggestion that Cockerham relied upon the Notice or changed his position with regard to his entitlement of LHWCA benefits or his status as a seaman, and therefore applying the doctrine of equitable estoppel would be inappropriate. Nor can the court conclude that collateral estoppel applies to the instant case. From the record before the court, it does not appear that the issue of Cockerham's seaman status has been determined or litigated in another proceeding, which precludes Cockerham's collateral estoppel argument. *See, e.g., Eddy v. Waffle House, Inc.*, 482 F.3d 674, 679 (4th Cir. 2007)(explaining that the proponent of collateral estoppel must establish, *inter alia*, that the issue sought to be precluded is identical to one previously litigated, the issue must have been actually determined in the prior proceeding, and that a final judgment be entered in the prior proceeding).

Finally, the court concludes that judicial estoppel is not applicable. Judicial estoppel, which is closely related to collateral estoppel, " 'precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.' " *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996)(quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995))(citations and internal quotation marks omitted in original). The Fourth Circuit has determined that certain elements must be met

before judicial estoppel may be applied. First, the party sought to be estopped must be seeking to adopt a position of fact that is inconsistent with a stance taken in prior litigation. *Lowery*, 92 F.3d at 224 (citing *Patriot Cinemas, Inc. v. Gen. Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987)). "Second, the prior inconsistent position must be accepted by the court." *Id.* The third, and most determinative, factor is that "the party sought to be estopped must have 'intentionally misled the court to gain unfair advantage.'" *Id.* (quoting *Tenneco Chems. v. William T. Burnett & Co., Inc.*, 691 F.2d 658, 665 (4th Cir.1982)).

In this case, as this court has previously discussed, Great Lakes has not taken an inconsistent position. When it filed the Notice of Controversion, Great Lakes stated that Cockerham had initiated this suit and claimed to be a seaman. Great Lakes has not varied in this contention. Nor is there any evidence in the record to indicate that another court or administrative agency "accepted" Great Lakes' valid statement that Cockerham has filed this action. *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n. 5 (6th Cir.1982)("[J]udicial acceptance means only that the first court has adopted the position urged by the party ... as part of a final disposition."). Finally, there is nothing in the record that suggests that Great Lakes attempted to mislead this court. Indeed, in its Memorandum in Support of the Motion for Summary Judgment, Great Lakes stated that Cockerham began receiving benefits immediately "and continued to do so until April 1, 2007 . . . when he began claiming he was a seaman." Mem. in Support of Mot. for Summ. J. [DE-18] at p. 7. Although Cockerham takes issue with that statement, noting that he filed this lawsuit in December 2006 and thus began claiming seaman status prior to April 2007, at bottom the statement is consistent with Great Lakes' prior actions and statements when it stopped paying him benefits under the LHWCA. In sum, the court concludes that this is not an appropriate case for judicial estoppel.

13
Case 7:06-cv-00184-F Document 25 Filed 02/04/08 Page 13 of 14

## IV. CONCLUSION

For the foregoing reasons, the court concludes that there are no genuine issues of material fact, and that Great Lakes is entitled to summary judgment on Cockerham's claims. Therefore, Great Lakes' Motion for Summary Judgment [DE-18] is ALLOWED, and Cockerham's Cross-Motion for Summary Judgment [DE-19] is DENIED. The Clerk of Court is DIRECTED to enter judgment accordingly and to close this case.

SO ORDERED.

This the 4 day of February, 2008.

JAMES C. FOX
Senior United States District Judge